**Opinion issued February 26, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00448-CV

———————————

**LEONARDO QUINTERO, JR., Appellant**

**V.**

**HOUSTON METHODIST HOSPITAL F/K/A THE METHODIST HOSPITAL, PATRICIA CHEVEZ-BARRIOS, M.D., MARY SCHWARTZ, M.D., AND TMH PHYSICIAN ORGANIZATION, Appellees**

---

**On Appeal from the 165th District Court**
**Harris County, Texas**
**Trial Court Case No. 2013-43058**

---

## MEMORANDUM OPINION

This is an appeal from the trial court's order dismissing Appellant Leonardo Quintero, Jr.'s lawsuit for failure to comply with Chapter 74's expert report requirement. Quintero sued Houston Methodist Hospital f/k/a The Methodist

Hospital, Patricia Chevez-Barrios, M.D., Mary Schwartz, M.D., and TMH Physician Organization, claiming medical malpractice arising out of the surgical removal of his eye. On appeal, Quintero contends that the trial court erred in finding that his two experts' reports did not satisfy Chapter 74. We affirm.

## Background

In May 2011, Quintero underwent a biopsy of tissue around his right eye. The tissue was sent to the Methodist pathology department for analysis where the three pathology slides were reviewed by Dr. Chevez-Barrios and Dr. Schwartz. Chevez-Barrios and Schwartz determined that one of the slides showed atypical cells "[c]onsistent with metastatic carcinoma."

Quintero went to MD Anderson Hospital, where different doctors ordered additional tests, reviewed the pathology slides that Chevez-Barrios and Schwartz previously had reviewed, and diagnosed Quintero with "poorly differentiated carcinoma." An MD Anderson surgeon, Bita Esmaeli, M.D., removed Quintero's right eye and the surrounding tissue. No cancerous tumor was found in the removed eye or tissue.

Quintero sued Chevez-Barrios and Schwartz, contending that they negligently analyzed the pathology slides and incorrectly diagnosed Quintero with metastatic carcinoma. He sued TMH, asserting that it was liable for Chevez-Barrios and Schwartz's acts. He also sued Methodist, asserting that it was

negligent in failing to maintain proper procedures to prevent pathology slides from becoming contaminated and was vicariously liable for Chevez-Barrios and Schwartz's acts.

Quintero served the defendants with an expert report by Dr. William Manion pursuant to section 74.351 of the Civil Practice and Remedies Code. Dr. Manion's expert report set out relevant facts, including information about the biopsy, Chevez-Barrios's and Schwartz's interpretations of the pathology slides, and Quintero's subsequent treatment and surgery at MD Anderson. According to Manion, Chevez-Barrios and Schwartz breached the standard of care in reviewing the pathology slides and reporting their pathology diagnosis, and Methodist breached the standard of care by either failing to maintain proper procedures or failing to comply with such procedures to prevent cross-contamination of pathology slides. Manion ultimately concluded that "[t]hese breaches of the standards of care . . . were a proximate cause of the misdiagnosis of Leonardo Quintero," and that without them, "Mr. Quintero would not have undergone the surgical removal of his eye." Manion did not review the pathology slides or Methodist's procedures in preparing his report; he reviewed only Quintero's medical records.

The defendants objected to Manion's report and moved to dismiss the case on the grounds that Manion's opinions were conclusory as to breach and causation.

The trial court held a hearing on the motions, and granted Quintero a 30-day extension to cure the report's deficiencies.

Within 30 days, Quintero served the defendants with a new expert report by a different doctor—Don Minckler, M.D. Dr. Minckler's report drew similar conclusions to Manion's, but was different in that it stated that Minckler reviewed Quintero's medical records and the "digitized pathology slides of Mr. Quintero." Minckler's report states that a "biopsy was recommended" and the specimens were submitted to pathology at Methodist. According to the report, the pathology diagnosis by Chevez-Barrios and Schwartz was "[c]onsistent with metastatic carcinoma." Minckler opined that in the digitized copies of the slides "no two positive cells to be consistent in shape or size. These cells were loose, independent and not obviously fixed. There was no convincing evidence of cancer evident on the slides." The report explains that Quintero was referred to MD Anderson where he was seen by Dr. Esmaeli. "A total body PET/CT scan was ordered . . . . The scans were negative but the recommendation was exenteration of Mr. Quintero's right eye."

With respect to causation, Minckler's report contained the following statements:

- Had Dr. Schwartz not diagnosed cancer, Mr. Quintero would not have been referred to MD Anderson and would not have undergone exenteration of his eye.

4

- Had Patricia Chevez-Barrios, M.D. not diagnosed cancer, Mr. Quintero would not have been referred to MD Anderson and would not have undergone exenteration of his eye.

- The misdiagnosis resulted in Leonardo Quintero being referred to MD Anderson for further treatment of his non-existent cancer.

The defendants objected to Minckler's report on essentially the same grounds as Manion's, with the additional argument that Minckler failed to review the original pathology slides and failed to explain how the unlabeled digitized copies were sufficiently reliable to support his conclusions. They moved to dismiss the case on the grounds that both reports were conclusory as to breach and causation. The trial court granted the motion and dismissed Quintero's claims with prejudice.

## Discussion

In two issues, Quintero contends that the trial court abused its discretion in granting the motion to dismiss because the expert reports were not conclusory regarding breach or causation and represented a good faith effort to satisfy the requirements of Chapter 74.

A.     Standard of Review

We review all rulings related to section 74.351 of the Texas Civil Practice and Remedies Code under an abuse of discretion standard. *Jelinek v. Casas*, 328 S.W.3d 526, 538–39 (Tex. 2010); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001). Although we defer to the trial court's

factual determinations, we review questions of law de novo. *Haskell v. Seven Acres Jewish Senior Care Servs., Inc.*, 363 S.W.3d 754, 757 (Tex. App.—Houston [1st Dist.] 2012, no pet.). A trial court has no discretion in determining what the law is, which law governs, or how to apply the law. *Poland v. Ott*, 278 S.W.3d 39, 45 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). An abuse of discretion occurs if the trial court fails to correctly apply the law to the facts. *Haskell*, 363 S.W.3d at 757 (citing *Petty v. Churner*, 310 S.W.3d 131, 134 (Tex. App.—Dallas 2010, no pet.)).

**B.    Applicable Law**

The Medical Liability Act provides that a claimant in a health care liability claim shall serve an expert report showing that the claim has merit within 120 days of the date the suit was filed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West Supp. 2014). Section 74.351 requires the expert report to provide a fair summary of the expert's opinions regarding: (1) the applicable standards of care; (2) the manner in which the care rendered failed to meet the standards; and (3) the causal relationship between that failure and the injury, harm, or damages claimed. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6); *Gray v. CHCA Bayshore, L.P.*, 189 S.W.3d 855, 858–59 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

The expert report need not marshal all of the plaintiff's proof, but it must demonstrate an objective good faith effort to comply with the statutory

6

requirements. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(l); *Palacios*, 46 S.W.3d at 878; *Gray*, 189 S.W.3d at 859; *Strom v. Mem'l Hermann Hosp. Sys.,* 110 S.W.3d 216, 221 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). To constitute a good faith effort to comply with the statute, the report must provide enough information to fulfill two purposes: it must (1) inform the defendant of the specific conduct that the plaintiff has called into question; and (2) provide a basis for the trial court to conclude that the claims have merit. *Scoresby v. Santillan*, 346 S.W.3d 546, 556 (Tex. 2011); *Palacios*, 46 S.W.3d at 879; *Gray*, 189 S.W.3d at 859. In making this determination, we review the information contained within the four corners of the report. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). A conclusory report does not fulfill these two purposes. *Palacios*, 46 S.W.3d at 879. "[R]ather, the expert must explain the basis of his statements to link his conclusions to the facts." *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999). The Act grants the trial court discretion to grant a plaintiff who timely serves a report one 30-day extension to cure its deficiencies. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c).

## C. Causation

The defendants contended that both the Manion and the Minckler reports were conclusory regarding breach and causation. Because we agree that the reports are conclusory as to causation, and this issue is dispositive, we do not

address the arguments regarding breach.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6); *see also Gray*, 189 S.W.3d at 858–59 (to meet statutory requirements, expert report must sufficiently address each of the required elements—standard of care, breach, and causation).

With respect to causation, the reports provide no basis for the conclusion that the MD Anderson surgeon, Dr. Esmaeli, relied upon the pathology slides  or Chevez-Barrios or Schwartz's interpretation of them in making the determination to remove Quintero's eye.  The reports state that doctors at MD Anderson reviewed the slides, and they were the ones who made the diagnosis of poorly differentiated carcinoma.  The reports contain no information regarding what Esmaeli relied upon in making the determination to operate.

This Court previously held in *Lo v. Gonzales*, No. 01-12-00987-CV, 2013 WL 1694938 (Tex. App.—Houston [1st Dist.] April 18, 2013, no pet.) (mem. op.) that an expert report must set forth facts showing causation and that causation may not be inferred.  In *Lo*, the plaintiff's expert opined that, had Lo correctly interpreted and reported the results of radiological tests, the plaintiff would have been more promptly diagnosed and would not have suffered the injuries alleged. *Id.* at \*6.  We concluded that the report "require[d] us to infer that [the plaintiff's diagnosing physician] relied solely on the" alleged omissions from Lo's report. *Id.* But "[t]his we may not do." *Id.*

Likewise, we may not infer that Esmaeli relied upon the pathology slides or Chevez-Barrios or Schwartz's interpretation of them without some factual basis for doing so. Quintero argues that the mere fact that he was referred to MD Anderson as a result of the alleged breaches is sufficient to establish causation, but we are not permitted to make such an inference. *See Lo*, 2013 WL 1694938, at *6 (expert report that requires court to infer reliance is conclusory as to causation); *Shenoy v. Jean*, No. 01-10-01116-CV, 2011 WL 6938538, at *6 (Tex. App.—Houston [1st Dist.] Dec. 29, 2011, pet. denied) (mem. op.) (if "but for" causation was sufficient under Chapter 74, "almost any prior action taken by a health care provider could be said to cause the ultimate outcome"); *Murphy v. Mendoza*, 234 S.W.3d 23, 28 (Tex. App.—El Paso 2007, no pet.) ("Nor can we infer that the surgeon relied upon the [allegedly erroneous] ambiguous report in deciding the surgical options.").

We therefore conclude that the reports are conclusory regarding causation and fail to establish a causal connection between the alleged breaches of the standard of care and Quintero's injuries. *See, e.g.*, *Shenoy*, 2011 WL 6938538, at *6 (expert report that stated that if the plaintiff had not been cleared for surgery he would not have suffered surgical complications was insufficient to satisfy the statutory requirements to show causation); *cf. Hendrick Med. Ctr. v. Conger*, 298 S.W.3d 784, 789 (Tex. App.—Eastland 2009, no pet.) (expert report statement is conclusory if it "expresses a factual inference without stating the underlying facts

on which the inference is based.").  Because the reports are conclusory regarding causation, a statutorily required element, we hold that the trial court did not abuse its discretion in finding that they do not constitute a "good faith effort" to comply with Chapter 74 and dismissing Quintero's claims.  *See Palacios*, 46 S.W.3d at 879; *Gray*, 189 S.W.3d at 859; *see also Scoresby*, 346 S.W.3d at 556 (conclusory expert report does not meet Chapter 74's requirements).

We overrule Quintero's two issues.

### Conclusion

We affirm the trial court's judgment.


Rebeca Huddle
Justice

Panel consists of Justices Jennings, Higley, and Huddle.